UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


BORROUGHS CORPORATION AND
BORROUGHS CORPORATION
EMPLOYEE BENEFIT PLAN,

       Plaintiffs,

vs                                                                          Case No: 11-12565
                                                                             Honorable Victoria A. Roberts

BLUE CROSS BLUE SHIELD OF
MICHIGAN,

       Defendant,

and

HI-LEX CONTROLS INCORPORATED, HI-LEX
CORPORATION AND HI-LEX CORPORATION
HEALTH AND WELFARE PLAN,

       Plaintiffs,

vs                                                                          Case No: 11-12557
                                                                             Honorable Victoria A. Roberts

BLUE CROSS BLUE SHIELD OF
MICHIGAN,

       Defendant.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**


**I.    INTRODUCTION**

This matter is before the Court on cross-motions for summary judgment filed, on

1

the one hand, by Defendant Blue Cross and Blue Shield of Michigan ("Blue Cross"), and on the other hand, by Plaintiffs Burroughs Corporation ("Burroughs") and Hi-Lex Corporation ("Hi-Lex").

The Complaints allege nine counts: (I) ERISA Breach of Fiduciary Duty - Defendant did not disclose fees it allocated to itself and made false or misleading statements concerning the fees; (II) ERISA Prohibited Transaction - Defendant engaged in self-dealing by charging a hidden fee and unilaterally determining the amount of the fee; (III-IX) various state and common law causes of action.

For the reasons that follow:

- Defendant's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.  The Court dismisses the state law claims (Counts III-IX) with prejudice.  Defendant's Motion is denied as to the ERISA claims (Counts I-II)

- Plaintiffs' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.  The Court grants summary judgment to Plaintiffs on Count II, ERISA prohibited transaction.  The Court denies summary judgment to Plaintiffs on all other counts.

- Issues of material fact remain as to Count I, ERISA Breach of Fiduciary Duty, as well as Defendant's statute of limitations defense.  These matters proceed to trial.  The resolution of the statute of limitations issue will necessarily affect the extent of liability under Count II, and the extent of liability, if any, under Count I.

2

## II.   BACKGROUND

These cases are two in a series involving entities which entered into Administrative Service Contracts ("ASC") with Blue Cross for claims administration services and network access for their self-funded employee health benefit plans. Burroughs first contracted with Blue Cross in 1994, and executed its current ASC in 2000.  Hi-Lex first contracted with Blue Cross in 1981, and executed its current ASC in 2002.  Hi-Lex and Burroughs entered into identical ASCs with Blue Cross.

Under the ASCs, Blue Cross serves as third-party administrator of Hi-Lex's and Burrough's employee health benefit plans; Blue Cross processes and pays employee health claims, provides access to its network for covered employees, and negotiates with hospitals and health care providers throughout the state.  Hi-Lex and Burroughs reimburse Blue Cross for claims paid on their behalf.

These cases are about certain fees that Blue Cross allocated to itself as additional administrative compensation.  Plaintiffs refer to the disputed fees as "Hidden Fees"; Defendant refers to them as "Access Fees."  The disputed fees, set forth in an unnumbered and untitled provision of Article III of the ASCs, include "The Provider Network Fee, contingency, and any cost transfer subsidies or surcharges . . . ." According to that provision, these fees will be "reflected in the hospital claims cost contained in the Amounts Billed."

At some point, Defendant began collectively referring to these fees internally and in reports to Hi-Lex and Burroughs as Access Fees.  The term is misleading.  The fees are not labeled Access Fees anywhere in the contract.  In fact, an entirely separate and unrelated provision of the ASC, Article VI Section B, is labeled "Access Fees."  This

3

section has no bearing on this litigation, and is unrelated to the Access Fees that Blue Cross refers to throughout its pleadings.  Thus, in order to avoid confusion, the fees that Plaintiffs refer to as Hidden Fees and Defendants refer to as Access Fees will be called "Disputed Fees" throughout this opinion and order.  Going forward, the parties are to use the term "Disputed Fees" to eliminate confusion.

In the late 1980s, Blue Cross was in poor financial shape.  In order to increase revenue, it began charging its self-insured customers additional fees, known as the "Plan-Wide Viability Surcharge," "Other Than Group ("OTG") Subsidy," and "Group Retiree Surcharge."  Understandably, the self-insured customers were dissatisfied with these new fees; in 1989 alone, Blue Cross lost 225,000 members to competitors.  The customers were unhappy that these charges amounted to an add-on to their bill.  They were also unhappy to be subsidizing insured customers.  Many customers who stayed with Blue Cross simply refused to pay the fee because they did not believe it was fair.  Blue Cross remained in poor financial shape.

In 1993, Blue Cross decided to hide the Disputed Fees by merging them with hospital claims on billing statements.  A 1993 document entitled Executive Summary, attached as Exhibit A to Plaintiffs' summary judgment brief, explains the plan.  The Summary reads, in relevant part:

> Reflecting Certain BCBSM business costs in hospital claim costs will provide long-term relief to the problems detailed above and will also satisfy short-term objectives of enhancing customer relationships while cutting operational costs. Inclusion of these costs in our hospital claim costs is actually more reflective of the actual savings passed on to customers as it will now include the hospital savings net of the costs incurred to provide these savings.  This will also improve our operations efficiencies since mass mailings for subsidy amount changes will no longer be necessary.  Changes to these costs will be inherent in the system and no longer visible to the customer.  The same argument applies to risk

4

charges and provider related expenses.

Thus, the various Disputed Fees were no longer visible on customers' billing statements, but were incorporated into bills submitted to the customer for hospital claims (after a reduction had already occurred because of Blue Cross's network discounts). The bills were not itemized to indicate how much money was owed for the hospital claim, versus how much was owed for the other fees; that would have defeated the purpose of the program. The program was known as "retention reallocation" with "retention" referring to money Blue Cross retains as opposed to money used to pay medical claims.

Plaintiffs say that from 1994 to present, Blue Cross employed a "bevy of artifices" to hide the fees. Indeed, on the various disclosures discussed in the pleadings and reviewed by the Court, the Disputed Fees are not itemized. Plaintiffs say they did not learn about the Disputed Fees until 2011. Defendants, on the other hand, point to the contractual language in the ASCs and renewals to argue that the Disputed Fees were fully disclosed, that Plaintiffs agreed to payment of the Disputed Fees, and that, therefore, they did not breach any duties in collecting the fees.

On June 5, 2012, the Michigan Court of Appeals issued an opinion in one of the many cases against Blue Cross alleging hidden fees. *See Calhoun County v. Blue Cross & Blue Shield of Michigan*, No. 303274 (Mich. Ct. App. June 5, 2012) (for publication). The case did not include ERISA claims, only state law tort and contract claims. Plaintiff argued that its ASC with Blue Cross was void due to indefiniteness, and that Blue Cross breached its fiduciary duty by unilaterally charging the Disputed Fees. The Michigan Court of Appeals disagreed. It held that "the language of the ASC

5

expressly provided for the collection of additional fees beyond the Administrative Charge and Stop Loss Coverage," and that, consequently, "the parties unequivocally agreed to the payment of the Access Fee."

The Court ordered briefing on the effect of *Calhoun County* on this case. Defendant stated that *Calhoun County* disposes of Plaintiffs' ERISA claims and state law claims. Plaintiffs stated that *Calhoun County* does not affect any of their claims. At a subsequent phone conference, both sides agreed that they were prepared to file summary judgment motions.

## III.   STANDARD OF REVIEW

The Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986). When reviewing cross-motions for summary judgment, the court must assess each motion on its own merits. *Federal Ins. Co. v. Hartford Steam Boiler Insp. and Ins. Co.*, 415 F.3d 487, 493 (6th Cir. 2005). "The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation." *Lee v. City of Columbus*, 636 F.3d 245, 249 (6th Cir.2011). "[T]he filing of cross-motions for summary judgment does not necessarily mean that an award of summary judgment is appropriate." *Spectrum Health Continuing Care Group v. Anna Marie Bowling Irrevocable Trust*, 410 F.3d 304, 309 (6th Cir.2005).

## IV.   ANALYSIS

6

### A.   *Calhoun County* Does Not Control the ERISA Counts

Relying on the Michigan Court of Appeals decision in *Calhoun County*, Defendant says the Court need answer but one question to dispose of all the claims in this case: "Did the Administrative Services Contract ("ASC") between Blue Cross and Plaintiffs authorize Blue Cross to collect the charges known as 'Access Fees'?"  In *Calhoun County*, the Michigan Court of Appeals answered that question in the affirmative. Defendant says the Court must apply *Calhoun County* and rule in its favor on the ERISA claims (Counts I and II) and the state law claims (Counts III - IX).

The Court disagrees that *Calhoun County* is dispositive for two reasons: (1) the court in *Calhoun County* did not address the precise issues before this Court; and (2) ERISA law is federal law; state rules of decision have no binding precedential effect.

*Calhoun County* was not an ERISA case.  It involved state law contract and tort claims, and was decided under state common law.  Indeed, because ERISA does not apply to any governmental employee benefit plan, Calhoun County could not have brought the case under the ERISA statute.  29 U.S.C. § 1003(b)(1).  The court in *Calhoun County* limited its analysis to the contract itself, the ASC between the plaintiff and Blue Cross.  The court found that, under the ASC, the parties agreed to the payment of the Disputed Fee, despite the fact that the ASC did not reference a specific dollar amount for the fee, or a means to calculate the fee.  The contract was not void due to indefiniteness, the court reasoned, because the amount of the Disputed Fee was "reasonably ascertainable through defendant's standard operating procedures." *Calhoun County v. Blue Cross & Blue Shield of Michigan*, No. 303274 (Mich. Ct. App. June 5, 2012) (for publication).

7

Though there is some overlap between the claims in *Calhoun County* and Plaintiffs' state law claims, Counts I and II, which assert violations of ERISA, 29 U.S.C. § 1001, *et seq.*, are the meat of Plaintiffs' complaints. The court in *Calhoun County* did not even consider any alleged false or misleading statements by Blue Cross which could constitute an ERISA violation. And, it is well-settled that parties cannot contract around the requirements of ERISA. *See Allstate Ins. Co. v. My Choice Med. Plan for LDM Techs., Inc.*, 298 F.Supp 2d 651, 654 (E.D. Mich. 2004) (quoting *Prudential Ins. Co. of Am. v. Doe*, 140 F.3d 785, 791 (8th Cir. 1998).

Moreover, Defendant's assertion that the *Erie* doctrine requires this Court to adhere to *Calhoun County* to decide the ERISA claims is misguided. All suits brought under ERISA are regarding as arising under the laws of the United States. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 55 (1987). A civil enforcement suit under ERISA is a federal question for jurisdictional purposes. *Id.* at 56. Where the ERISA statute does not address a particular issue in a case brought under ERISA's civil enforcement provision, "federal courts are expected to develop a body of federal common law to fill the interstitial gap in the statutory mandate." *Regents of the University of Michigan v. Employees of Agency Rent-A-Car Hospital Ass'n*, 122 F.3d 336, 339 (6th Cir. 1997) ("*Regents*"). The *Erie* doctrine is simply inapplicable to federal questions.

This is not to say that the *Calhoun County* decision is irrelevant. The Sixth Circuit in *Regents* noted that "[i]n developing such federal common law, the federal court may take direction from the law of the state in which it sits, or it may generally review law on the issue and adopt a federal rule." *Regents*, 122 F.3d at 339. In

8

addition, if this Court were to find that this action was improperly brought under ERISA, then *Calhoun County* would control any surviving state law claims.  But, to argue as Defendant does -- that *Calhoun County* disposes of all of Plaintiffs' claims -- vastly oversimplifies the analysis.

### B.      Is This an ERISA Case?

ERISA is a "comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans."  *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983).  The duties ERISA imposes on fiduciaries have been called "'the highest known to law.'" *Chao v. Hall Holding Co.*, 285 F.3d 415, 426 (6th Cir. 2002) (quoting *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996)).

Before the Court can consider whether Blue Cross breached any duties under ERISA, it must first find that Blue Cross was a fiduciary with respect to the plan; that Blue Cross exercised control of plan funds; and that ERISA could provide Plaintiffs their desired relief.  The Court turns to these questions now.

### 1.      Blue Cross Was a Fiduciary With Respect to the Plan

Fiduciary status plays a critical role in the ERISA remedial scheme.  This is because "[s]ection 1109 [of ERISA] . . . makes any person found to be a fiduciary personally liable to the ERISA-covered plan for any damages caused by that person's breach of fiduciary duties." *Briscoe v. Fine*, 444 F.3d 478, 486 (6th Cir. 2006); *see also McLemore v. Regions Bank*, 682 F.3d 414, 422 (6th Cir. 2012) (explaining that the issue of fiduciary status is paramount because ERISA permits a plaintiff to obtain both damages and equitable relief against fiduciaries, but only equitable relief against non-

9

fiduciaries).  Importantly, claims for breach of fiduciary duty and prohibited transactions under ERISA §§ 404 and 406(b) -- the exact claims in Plaintiffs' complaints -- may only be brought against a fiduciary within the meaning of ERISA.  *Mertens v. Hewitt Associates*, 508 U.S. 248, 252-53 (1993).

In relevant part, ERISA provides that "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . ."  29 U.S.C. § 1002(21)(A).  "Person" is defined broadly to include a corporation such as Blue Cross.  *Id.* § 1002(9).  Based on the second "or" clause in subsection (i), the statute imposes fiduciary status on two types of entities: (1) entities which exercise *discretionary* control over the disposition of plan assets; and (2) entities which exercise *any* authority or control over plan assets. *Briscoe v. Fine*, 444 F.3d at 490-91; *see also Guyan Int'l v. Professional Benefits Administrators, Inc.*, — F.3d —, 2012 WL 3553281, No. 11-3126 (6th Cir. Aug. 20, 2012)**.**

Determinations of fiduciary status must be made on a case-by-case basis; it is not an all-or-nothing question.  The Sixth Circuit employs a "functional test" to determine fiduciary status.  *Briscoe*, 444 F.3d at 486.  Thus, the court must examine the conduct at issue, not whether there is a formal trusteeship in place.  *Id.* (citations omitted).  The relevant question is "whether an entity is a fiduciary with respect to the particular activity in question."  *Guyan*, 2012 WL 3553281 at *2.   The Sixth Circuit holds that a third-party administrator such as Blue Cross "becomes an ERISA fiduciary when it exercises 'practical control over an ERISA plan's money.'" *Id.* (quoting *Briscoe*, 444 F.3d at 494).

10

On at least two occasions the Sixth Circuit held that a third-party administrator of an employee health benefit plan was a fiduciary under ERISA.  In *Guyan,* the plaintiffs entered into contracts with a third-party administrator which required the administrator to establish accounts for each plaintiff into which it would deposit funds received from each plaintiff for the purpose of paying medical claims. *Id.* at *1.  The third-party administrator was authorized to pay medical claims by writing checks from this account.  *Id.*  The Sixth Circuit held that "when [the third-party administrator] received Plan funds from Plaintiffs and deposited them into an account of its choice, [it] exercised control over those funds, as demonstrated by [its] use of Plan funds for its own purposes . . . ."  *Id.*  It then added that "[the third-party administrator] was a fiduciary under ERISA because it exercised authority or control over Plan assets."  *Id.* at *3.  Among the evidence of the third-party administrator's control or authority were its ability to write checks on the Plan account, and its ability to determine where Plan funds were deposited, and how and when they were disbursed.  *Id.*

Similarly, in *Briscoe*, the plaintiffs entered into contracts with a third-party health benefits administrator which "would receive a claim from a healthcare provider, process that claim to determine whether it was covered by the Company's plan, and, if the claim was covered, [it] would advise the Company on a weekly basis of the money that needed to be deposited into the account from which [it] paid the service providers."  444 F.3d at 483.  The account had no minimum balance and was designed to "zero out" after the administrator made payments on the claims.  *Id.*  The Sixth Circuit held that this was "sufficient evidence to demonstrate that [the third-party administrator] exercised control over the assets of the Company's healthcare plan . . ." and that it was, therefore,

11

an ERISA fiduciary. *Id.* at 491-92. One aspect the Court relied upon in finding that the administrator exercised control over plan assets, and was therefore a fiduciary, is that it "allott[ed] to itself an administrative fee . . . ." *Id.* at 494.

In a third case in this district, with nearly identical facts, Judge Tarnow held that Blue Cross was a fiduciary when it assessed an "other than group" ("OTG") fee, a type of cost-transfer subsidy. As quoted by the Sixth Circuit, Judge Tarnow ruled on the record:

> I find that [BCBSM], in fact, exercised authority or control over the Plan assets, and under ERISA it was a fiduciary. That's because the [Fund] had to advance funds to [BCBSM], which then paid the claims on the [Fund]'s behalf to the providers. Sometimes, as it has been mentioned here, [BCBSM] had to pay more than was advanced, but [the Fund] was responsible for making up the difference, which is an inherent nature of self-insuring arrangement.
>
> ....
>
> This shows that [BCBSM] exercised control over Plan assets, and there's really no factual dispute about this. The [Fund]'s knowledge of the OTG fee is not relevant or material to the question of whether [BCBSM] exercised control over the assets.
>
> Accordingly, [BCBSM] was a fiduciary in assessing the OTG fee.
>
> *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Michigan*, 654 F.3d 618, 626 (6th Cir. 2011).

The Sixth Circuit did not disturb Judge Tarnow's ruling regarding the fiduciary status of Blue Cross, though it does not appear to have been at issue on appeal.

Applying the holdings of *Briscoe*, *Guyan*, and *Pipefitters*, Blue Cross was a fiduciary when it allocated the Disputed Fee from plan assets to itself. By accepting regular deposits from Plaintiffs for the purpose of paying health claims, Blue Cross exercised "practical control over an ERISA plan's money." *See Guyan* at *2. The fact

12

that Blue Cross was able to allocate to itself an administrative fee demonstrates its control over plan assets.  Indeed, the facts of this case are nearly identical to those in *Pipefitters*, where Judge Tarnow found that Blue Cross was a fiduciary.  As in *Pipefitters*, this case involves the alleged failure of Blue Cross to disclose certain fees, as well as the alleged making of false and misleading claims about the fees.  And, as in *Pipefitters*, this case involves Blue Cross's unilateral allocation of a hidden fee from plan assets.

The Court is well aware that "mere custody or possession over the plans' assets" does not render an entity an ERISA fiduciary.  *See Briscoe,* 444 F.3d at 494 (quoting *Chao v. Day*, 436 F.3d 234, 237 (D.C. Cir. 2006)).  The Court also recognizes that a third-party administrator does not become a fiduciary merely by performing ministerial functions or clear contractual obligations.  *See Seaway Food Town, Inc. v. Medical Mutual of Ohio*, 347 F.3d 610, 619 (6th Cir. 2003).  Neither of these circumstances is present here; Blue Cross's arguments to the contrary are not persuasive.

Blue Cross primarily relies on two cases for its argument that it is not a fiduciary.  In *Seaway*, the Sixth Circuit held that a third-party administrator of an employee health benefit plan was not an ERISA fiduciary where the contracts between the parties allowed the administrator to "retain any funds resulting from the provider discounts for its sole benefit."  347 F.3d at 618.  The Court held:

> We agree with the Seventh Circuit's reasoning that where parties enter into a contract term at arm's length and where the term confers on one party the unilateral right to retain funds as compensation for services rendered with respect to an ERISA plan, that party's adherence to the term does not give rise to ERISA fiduciary status unless the term authorizes the party to exercise discretion

13

with respect to that right.

*Id.* at 619.

Blue Cross says that *Seaway* controls because the ASCs grant it the unilateral right to retain the Disputed Fees.  The argument is as follows: Article III of the ASC states in relevant part that "[t]he Provider Network Fee, contingency, and any other cost transfer surcharges ordered by the State Insurance Commissioner as authorized pursuant to 1980 P.A. 350 will be reflected in the hospital claims cost contained in the Amounts Billed."  The items in this section are what Plaintiffs call the Hidden Fees and Blue Cross calls the Access Fee.  In Article I of the ASC, "Amounts Billed" is defined as "the amount the Group owed in accordance with [Blue Cross's] standard operating procedures for payment of Enrollees' claims."  From these provisions, Blue Cross reasons that, like in *Seaway*, the contract grants it the unilateral right to retain the Disputed Fee, and adherence to these contractual terms does not give rise to ERISA fiduciary status.

*Seaway* does not control for one simple reason: *Seaway* holds that adherence to a contractual term does not give rise to fiduciary status "*unless the term authorizes the party to exercise discretion with respect to that right.*"  347 F.3d at 619 (emphasis added).  The ASC does not set forth a dollar amount for the Disputed Fee, nor does it set forth a method by which the Disputed Fee is calculated.  In short, it grants Blue Cross discretion to determine the amount of the Disputed Fee, and the record reflects that Blue Cross did just that.  Blue Cross argues that the "discretion" *Seaway* contemplates is discretion whether or not to charge a fee, not discretion to determine the amount of a fee that is authorized by the contract.  This distinction is without a

14

logical basis.  At least one other district court agrees.  *Charters v. John Hancock Life Ins. Co.*, 583 F.Supp.2d 189, 197 (D. Mass. 2008) (citing *Seaway*, 347 F.3d at 619) ("If . . . an agreement gives an insurance company control over factors that determine the amount of its compensation, that company becomes an ERISA fiduciary with respect to its own compensation.").

The second case Blue Cross relies on, *McLemore v. Regions Bank*, 682 F.3d 414 (6th Cir. 2012), is distinguishable.  In *McLemore*, a bankruptcy trustee and former clients of an investment advisor sued a bank where the advisor maintained accounts of defrauded employee benefit plans, alleging that the bank knowingly or in bad-faith allowed the advisor to steal from the accounts in violation of ERISA.  Among the evidence the plaintiffs offered as proof of the bank's fiduciary status was that it regularly withdrew fees from the plan accounts.  In holding that the bank was not a fiduciary, the Sixth Circuit stated:

> Here, the Trustee alleges only that "[the bank] regularly withdrew its fees and analysis charges from the trust funds it held. Nothing suggests that [the bank] did anything other than collect contractually owed fees. Unlike the *Briscoe* plaintiff, the Trustee does not allege that [the bank] unilaterally exercised any power to pay itself fees . . . [The bank] collected only routine fees authorized by its depository agreement . . .

> *Id.* at 424.

Here, Blue Cross was not merely collecting routine fees when it paid itself the Disputed Fees.  It exercised discretion in a deliberately opaque manner to determine the amount of fees to pay itself.  Moreover, the Court in *McLemore* was concerned with the policy implications of extending ERISA fiduciary status to all banks which withdraw fees from customer accounts.  It stated:

15

The Trustee fails to proffer—nor have we found—any case extending fiduciary status to a bank under these circumstances. Construing the allegations in the light most favorable to the Trustee, Regions' withdrawal of routine contractual fees constitutes no more an exercise of control than any other account holder's request effectuated by a depositary bank.

*Id.*

The holding in *McLemore* may properly be viewed as limited to banks.  It does not apply to the facts of this case.

### 2.    The Disputed Fees Were Paid from Plan Assets

Defendant next argues that Plaintiffs cannot establish a loss to the ERISA plans because the plans had no assets.  A loss is required for an action to be brought under ERISA § 409.  Defendant says, "It follows that Plaintiffs must establish that Access Fees were paid from 'plan assets' in order to demonstrate a remediable loss under § 409." According to Defendant, the weekly wire funds from Plaintiffs were not plan assets because the contracts explicitly disclaim that label.  Defendant points out that the Burroughs Plan explicitly states that the plan has no assets, and the Hi-Lex Plan states that benefits are "paid directly out of the assets of the Company" and that "there is no special fund or trust from which self-insured benefits are paid."

Defendant's argument is an attempt to elevate form over function, and is unsupported by law.  Parties are not free to contract out of the requirements of ERISA. *West v. AK Steel Corp.*, 484 F.3d 395, 408 (6th Cir. 2007).  The test is a functional one; no magic words in a contract can shield an entity from fiduciary liability, as the Sixth Circuit recently explained.  *Guyana* at *3 ("[The administrator] seeks to shield itself from fiduciary liability by pointing to portions of its agreement that expressly state that it is not a fiduciary.  But *Briscoe* specifically reasoned that language in a contract purporting to

16

limit fiduciary status does not 'override a third-party administrator's functional status as

a fiduciary.") It follows that language in a contract purporting to de-fund an employee

benefit plan does not override the court's duty to determine under a functional test

whether the plan had assets.

The funds Plaintiffs deposited with Blue Cross are plan assets.  In *Pipefitters*, the

plaintiff entered into a nearly identical funding arrangement with Blue Cross, which

Judge Tarnow described as follows: "[T]he [plaintiff] had to advance funds to [BCBSM],

which then paid the claims on the [plaintiff's] behalf to the providers.  Sometimes . . .

[BCBSM] had to pay more than was advanced, but the [plaintiff] was responsible for

making up the difference, which is an inherent nature of a self-insuring arrangement."

654 F.3d at 626.  Judge Tarnow then held that "[t]his shows that [BCBSM] exercised

control over Plan assets, and there's really no factual dispute over this."  This ruling was

not disturbed on appeal, and there is no factual distinction between *Pipefitters* and the

case before this Court.

A second Sixth Circuit case, *Libbey-Owens-Ford Co. v. Blue Cross and Blue*

*Shield Mut. of Ohio*, 982 F.2d 1031 (6th Cir. 1993), further undermines Defendant's

argument.  Again, the facts regarding funding of the plan in that case are nearly

identical to the facts here.

> Blue Cross provided monthly statements to Libbey-Owens-Ford of the amount
> paid to health-care providers and to other Blue Cross plans, as well as the
> amount of administrative charges that Libbey-Owens-Ford owed to Blue Cross.
> The amended agreement required Libbey-Owens-Ford to make a deposit with
> Blue Cross that represented approximately two months of claims and
> administrative fees calculated as a percentage of the claims paid.
>
> 982 F.2d at 1032.

17

The Sixth Circuit reversed a district court decision which held that because the plan had no assets, there were no funds for which Blue Cross would be obligated to account. The Sixth Circuit held: "[A] fiduciary duty is present because Blue Cross could earmark the funds that Libbey-Owens-Ford allocated to the plan."  *Id.* at 1036.

Even if separate segregated accounts did not exist for plan assets from Hi-Lex and Burroughs, Blue Cross could "earmark the funds" that Hi-Lex and Burroughs allocated to the plans.  Under *Libbey-Owens-Ford*, Blue Cross controlled "plan assets."

### 3.    Relief is Available to Plaintiffs under ERISA

Blue Cross states that because Hi-Lex and Burroughs are the named plaintiffs, rather than the plans themselves, no relief is available under ERISA.  That is, Hi-Lex and Burroughs cannot recover money damages, according to Blue Cross, because any recovery must inure to the plans themselves.

This argument was recently rejected by the Sixth Circuit in *Guyan*.  In *Guyan*, the third-party administrator argued that "Plaintiffs have no claim for damages under 29 U.S.C. §§ 1109(a) and 1132(a)(2) because they seek to recover for themselves as individual entities rather than on behalf of each Plaintiff's respective plan . . . ." 2012 WL 3553281 at *5.  In finding that the plaintiffs could recover on behalf of the plans, the Sixth Circuit held:

> Plaintiffs' complaints and summary-judgment briefs are more than sufficient in light of *Tullis [v. UMB Bank, N.A.*, 515 F.3d 673 (6th Cir. 2008)]  to demonstrate that Plaintiffs' actions seek recovery on behalf of each Plaintiff's respective Plan. Plaintiffs expressly state in these pleadings that they bring this action on behalf of each Plaintiff's respective Plan. And Plaintiffs allege harm to the Plans themselves and the Plan participants, some of whom have been refused medical care and received collection notices, all because PBA diverted Plan funds for its own use rather than pay the claims as it promised.

18

*Id.*

Hi-Lex and Burroughs make clear that they seek to recover on behalf of the plans.  In footnote 21 of their Response Brief, Plaintiffs state: "Any recovery can be credited by BCBSM against Plaintiffs' future claims or can be held in constructive trust for the benefit of the Plaintiff Plans."  This is sufficient under *Guyan* to demonstrate that Plaintiffs seek relief on behalf of the plans.

### C.     Plaintiffs' State Law Claims are Preempted by ERISA

Having found that Blue Cross is a fiduciary and that ERISA governs, the Court revisits the issue of preemption of Plaintiffs' state law claims.  The Court previously dismissed Plaintiffs' state law claims without prejudice but allowed discovery to proceed on them, stating that "at the close of discovery Plaintiffs may be able to reinstate them without regard to any statute of limitations concerns."  (Doc. 22 of 11-12557) The Court now holds that the state law claims are preempted; they are dismissed with prejudice.

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).  The scope of ERISA preemption is very broad.  The Sixth Circuit recognizes "that virtually all state law claims relating to an employee benefit plan are preempted by ERISA."  *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991) (quoted in *Briscoe*, 444 F.3d at 497).

Plaintiffs' state law claims arise out of the same operative facts as the ERISA claims.  Plaintiffs seek relief for the same conduct through "alternative enforcement mechanisms."  *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 698 (6th Cir. 2005).  As such, *Briscoe* requires that these claims be dismissed with

19

prejudice.  444 F.3d at 501.

**D.    Liability**

**1.    Count II - ERISA Prohibited Transaction**

Section 1106(b)(1) prohibits a fiduciary from "deal[ing] with the assets of the plan in his own interest or for his own account."  This is plainly what Blue Cross did when it unilaterally determined the amount of Disputed Fees to keep as part of its administrative compensation and collected those fees from plan assets.  Because Section 1106(b)(1) sets forth "an absolute bar against self dealing" by a fiduciary, Blue Cross is liable.  *See Brock v. Hendershott*, 840 F.2d 339, 341 (6th Cir. 1988).

A case from the Ninth Circuit is directly on point.  *Patelco Credit Union v. Sahni*, 262 F.3d 897 (9th Cir. 2001).  In *Patelco*, the Ninth Circuit ruled that a third-party administrator of an employee health plan engaged in prohibited self-dealing when he determined his own administrative fee.  *Id.* at 911.  The administrator alleged that he was entitled to keep a portion of the client's monthly payments as an administrative fee, but the court disagreed.  The Court stated:

> By his own admission, it is also undisputed that [the third-party administrator] paid insurance premiums for [the client's] coverage but marked up those premiums when charging that expense to [the client], in violation of § 1106(b)(1). And, viewing the evidence in the light most favorable to [the third-party administrator], it is undisputed that at the very least he determined his own administrative fees and collected them himself from the Plan's funds, in violation of § 1106(b)(1) . . . Thus, the undisputed facts establish, as a matter of law, that [the third-party administrator]  breached his fiduciary duties by engaging in prohibited self-dealing.

> *Id.*

A district court opinion from the Seventh Circuit is in accord.  *Chao v. Crouse*,

346 F.Supp.2d 975 (S.D. Ind. 2004).  In *Chao*, officers and directors of a corporation were alleged to have violated Section 1106(b)(1) by using the assets of an employee benefit fund for various personal and business expenses.  The defendants argued that certain administrative costs that they unilaterally allocated to themselves from the plan were proper.  The court disagreed, applying *Patelco*: "Defendants' argument is again unpersuasive.  While ERISA provides that a fiduciary may defray reasonable expenses of administering the plan, it does not allow a fiduciary to set its own administrative fee and directly collect those fees from plan assets."  *Id.* at 988.

It is undisputed that Blue Cross determined its own administrative fee and collected it from plan assets.  Plaintiffs need establish nothing more to prove a violation of Section 1106(b)(1).  The existence or non-existence of Blue Cross standard operating procedures for calculating the Disputed Fees -- which remains in dispute -- does not create an issue of material fact.  Whether Blue Cross calculated its fee according to a set methodology or pulled numbers out of the sky, it still unilaterally dealt with plan assets for its own benefit.  The ASCs do not set forth any standard operating procedures for determining the Disputed Fees; nor is there any evidence that standard operating procedures were incorporated by reference, or otherwise ascertainable to Plaintiffs.  Blue Cross acted unilaterally with respect to the Disputed Fees.  This sort of self-dealing is a *per se* breach of Section 1106(b)(1).

### 2.    Issues of Material Fact Remain as to Count I and Defendant's Statute of Limitations Defense

Section 1104(a)(1) sets forth the duty of loyalty that ERISA fiduciaries owe the plan, beneficiaries, and the participants.  It requires that fiduciaries discharge their

duties "solely in the interests of participants and beneficiaries." *Id.* The Supreme Court holds that "[t]o participate knowingly and significantly in deceiving a plan's beneficiaries in order to save the employer money at the beneficiaries' expense is not to act 'solely in the interest of the participants and beneficiaries.'" *Varity Corp. v. Howe*, 516 U.S. 489, 506 (1996). The Sixth Circuit holds that misleading communications to plan participants regarding plan administration support a claim for breach of fiduciary duty. *Krohn v. Huron Memorial Hospital*, 173 F.3d 542, 547 (6th Cir. 1999) (internal citation omitted).

Issues of material fact exist regarding whether Defendant breached its fiduciary duty by lying to or misleading Plaintiffs about the Disputed Fees. A non-exclusive list of material factual disputes the Court identifies includes:

- Whether Blue Cross lied in a Hi-Lex bid form when it wrote "N/A" in the row entitled "Network Access / Management Fees."

- Whether the various reports and disclosures Blue Cross issued to Plaintiffs are false or misleading with respect to the Disputed Fees.

- Whether the Value of Blue Reports accurately disclosed the Disputed Fees.

Issues of material fact also remain regarding Defendant's statute of limitations defense. These factual disputes are closely intertwined with Count I, since Plaintiffs allege that Blue Cross engaged in fraud or concealment to hide its breach of fiduciary duty.

"[A]n ERISA plaintiff alleging a breach of fiduciary duty generally has six years to file suit, [but] this period may be shortened to three years when the victim had actual knowledge of the breach or violation." *Brown v. Owens Corning Investment Review*

*Committee*, 622 F.3d 564, 570 (6th Cir. 2010) (construing 29 U.S.C. § 1113) (internal

quotations and citations omitted).  The ERISA statute of limitations increases to six

years "after the date of discovery" of the alleged breach or violation "in the case of fraud

or concealment."  29 U.S.C. § 1113.  In order to rely on the fraud or concealment

section, as Plaintiffs do here, they must show: "(1) that defendants engaged in a course

of conduct designed to conceal evidence of their alleged wrong-doing and that (2) the

plaintiffs were not on actual or constructive notice of that evidence, (3) despite their

exercise of diligence." *Brown*, 622 F.3d at 573.

 The issues of material fact identified above which go to Count I are also relevant

to the first prong of *Brown*'s fraud or concealment test.  Other issues of material fact

which affect the statute of limitations issue include:

-  Whether, and at what date, Plaintiffs gained actual knowledge of the facts constituting Blue Cross's alleged ERISA violations.

-  Whether the Value of Blue reports constitute actual or constructive notice of the Disputed Fees.

-  Whether the ASCs, annual renewals, or other reports issued by Blue Cross constitute actual or constructive notice of the Disputed Fees.

-  Whether Plaintiffs' exercised diligence to uncover the alleged misconduct.

-  Whether the Disputed fees were disclosed to Hi-Lex CFO, Tony Schultz, during a meeting with Blue Cross representative Ron Crofoot in August 1994.

Resolution of the statute of limitations is necessary to determine the extent of

Defendant's liability under Count II, and the extent of its liability, if any, under Count I.

**V.      CONCLUSION**

The Court **GRANTS** summary judgment to Defendant on Counts III-IX and

**DISMISSES WITH PREJUDICE** Plaintiffs' state law claims.  The Court **GRANTS**

summary judgment to Plaintiffs on Count II, ERISA Prohibited Transaction.  Issues of

material fact remain as to Count I and Defendant's statute of limitations defense.

**IT IS ORDERED.**

s/Victoria A. Roberts                          
Victoria A. Roberts
United States District Judge

Dated:  September 7, 2012

---

The undersigned certifies that a copy of this
document was served on the attorneys of
record by electronic means or U.S. Mail on
September 7, 2012.

s/Linda Vertriest                    
Deputy Clerk

---

24